# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 25-0724V**

| | |
|---|---|
| EMILY GAN,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: August 13, 2026 |

*Courtney Christine Jorgensen, Siri & Glimstad, LLP, Phoenix, AZ, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On April 25, 2025, Emily Gan filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 25, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent has filed his Rule 4(c) Report asserting that this case is not appropriate for compensation (ECF No. 24). For the reasons set forth below, I determine

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that the record preponderantly supports a finding that Petitioner's injury was primarily limited to the shoulder in which she received the vaccine, and that no other condition or abnormality would likely explain her post-vaccination symptoms and findings

## I. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health*

*& Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II. Findings of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4(c) Report, and additional evidence filed. Specifically, I highlight the following evidence:

- Petitioner received a flu vaccine in her left arm on October 25, 2022. Ex. 12 at 4.
- About a week later (November 2, 2022), Petitioner was seen at an urgent care facility for left upper arm pain following vaccination. Ex. 11 at 13. She also complained of "tingling radiating down her [left] arm to fourth and fifth digits." *Id*. at 14. She was referred to a neurologist. *Id*.
- An EMG performed the following month (December 12, 2022) was normal. Ex. 9 at 8-9.
- Petitioner did not seek treatment of her shoulder pain again for nearly five months, undergoing a physical therapy ("PT") examination on May 1, 2023. Ex. 6 at 2. At that time, she complained of left shoulder pain "specifically deltoid muscle" following vaccination. *Id*. Her symptoms persisted, though they had improved over time. *Id*. She also reported that she initially experienced "numbness and tingling and radiating pain . . . into her [left] forearm and 4-5th digits." *Id*.
- Petitioner underwent a routine physical examination on June 10, 2024 – over a year later. Ex. 4 at 63-66. Her left shoulder exhibited mildly limited range of motion. *Id*. at 65. Although no neurological findings were noted on examination, Petitioner was assessed with idiopathic peripheral neuropathy, described as "2-3 yrs [left] arm numbness," in addition to left shoulder pain. *Id*. at 65-66.
- Petitioner saw John Sharkey, M.D., for left shoulder pain on August 7, 2024. Ex. 4 at 59-61. She described her pain as sharp, tingling, and dull. *Id*. at 60. It had

begun two years earlier after vaccination and had improved slowly but persisted, ranging from four to eight out of ten in intensity. *Id*. Dr. Sharkey stated that if her pain worsened she should follow up, at which point imaging would likely be ordered. *Id*. at 61.

- Petitioner underwent a PT evaluation for left shoulder pain on August 12, 2024. Ex. 4 at 49-51. She reported left shoulder pain that began a day after vaccination and had persisted for more than two years. *Id*. at 50. Her pain had been associated with shooting pain down her arm and hand. *Id*. She now rated her pain three out of ten, ranging to four out of ten at worst, and stated that it "radiates to the 4th and 5th finger[s] associated with tingling/numbness." *Id*. at 50.

- Petitioner has filed a declaration in support of her claim. Ex. 1. She states that her left shoulder was painful and swollen the day after vaccination. *Id*. at ¶ 4. About a week later (November 2nd), she woke up in the middle of the night with a sharp pain in her left arm and tingling in her fourth and fifth fingers. *Id*. at ¶ 5. She continued to experience intermittent symptoms in her left hand and arm. *Id*. at ¶ 7. She tried to return to the gym on December 4, 2022, but felt "paresthesia in my left hand and a tight glove feeling up to my elbow." *Id*. at ¶ 8. She continues to experience numbness in her fingertips and dull aches in her left arm. *Id*. at ¶ 9.

### A. Whether Petitioner's Shoulder Pain was Primarily Limited to Her Left Shoulder

Respondent argues that Petitioner reported pain outside of her left shoulder, preventing her from establishing a Table SIRVA claim. Rule 4(c) Report at *5-6. Respondent cites Petitioner's November 2, 2022 appointment, at which she complained of tingling in her left arm that radiated down her arm into her fourth and fifth digits. *Id*. (citing Ex. 11 at 14-15). For nearly two years thereafter, Petitioner continued to report radiating tingling, numbness, and pain from her shoulder to her fingers. *Id*. at *6 (citing Ex. 4 at 50, 60; Ex. 6 at 2).

I have previously found that references to symptoms originating in a claimant's shoulder but including incidental impacts elsewhere in the arm or trunk do not necessarily prevent satisfaction of this SIRVA element. *See Valdez v. Sec'y of Health & Human Servs*., No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs*., No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to

adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original).

In this case, Petitioner at times reported pain that radiated to her left forearm and/or hand. However, when she reported symptoms in her forearm or hand, she consistently described her pain as being located *primarily* in her left shoulder and radiating into her forearm and fingers. Ex. 6 at 2; Ex. 4 at 50; Ex. 11 at 13-14. As such, the record supports a finding that Petitioner's pain was primarily limited to her left shoulder.

### B. Whether Petitioner Had Another Condition that Would Explain Her Post-Vaccination Symptoms

Respondent argues that Petitioner has not established that another condition would not explain her post-vaccination symptoms, citing her June 10, 2024 diagnosis of idiopathic peripheral neuropathy. Rule 4 Report at *6 (citing Ex. 4 at 65).

Although Respondent correctly points out that Petitioner's medical records include the cited diagnosis, the record in which the diagnosis was recorded contains no neurological examination findings or explanation for the diagnosis beyond referring to her history of left arm numbness, which the healthcare provider noted as persisting for two to three years – the same period as her left shoulder pain. Ex. 4 at 65-66. And Petitioner's EMG (performed a month and a half after vaccination) was normal. Ex. 9 at 8-9. Thus, there is no indication that the alternative diagnosis of idiopathic peripheral neuropathy – the basis for which is not clear – *more likely* explains her post-vaccination symptoms. Given the long treatment gap prior to it, it could well have nothing to do with the present claim. Under these circumstances, I find that the record supports a finding that no other condition likely caused Petitioner's post-vaccination symptoms.

In light of these findings, Petitioner is encouraged to promptly serve a demand and engage Respondent in negotiations. Any demand should, however, take into account the limited treatment and instances of lengthy treatment gaps – all of which suggest a fairly mild SIRVA, and thus one that should not warrant high damages.

## Scheduling Order

- **Petitioner shall file, by no later than <u>Wednesday, September 30, 2026</u>, a status report providing an update on the parties' discussions, including whether and when Petitioner has served a demand and whether there are any updated medical records.**

- **Respondent shall file, by no later than Wednesday, October 14, 2026, a status report indicating whether he is willing to engage in tentative discussions concerning settlement or proffer or remains opposed to negotiating at this time; and stating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master